UNITED  STATES  DISTRICT  COURT

FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. SA CR 06-224-AG |
| | ) | |
| Plaintiff, | ) | ORDER DENYING MOTION TO |
| | ) | DISMISS COUNTS ONE THROUGH |
| v. | ) | FOUR OF SECOND SUPERSEDING |
| | ) | INDICTMENT |
| | ) | |
| MICHAEL S. CARONA, DEBRA | ) | |
| VICTORIA HOFFMAN, a/k/a Debra | ) | |
| Victoria Schroff, a/k/a Debra Hoffman | ) | |
| Schroff, and DEBORAH CARONA, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Before the Court is the Motion to Dismiss Counts One Through Four of Second Superseding Indictment ("Motion"), brought by Defendant Michael Carona and joined by Defendant Deborah Carona and Defendant Debra Hoffman (referred to collectively as "Defendants"). This Motion raises important issues concerning the proper allocation of power when the interests of the federal government intersect with the prerogatives of state and local governments. In this case involving the alleged corruption of high-ranking local officials, the Court finds that prosecutorial power has been properly allocated to the federal government and Counts One through Four have been properly pled against all Defendants. The Motion is thus DENIED.

## BACKGROUND

Count One of the nine-count Second Superseding Indictment ("SSI") against Michael Carona, Deborah Carona, and Debra Hoffman alleges that Defendants conspired to use Michael Carona's office as Orange County Sheriff to enrich themselves and other co-conspirators, thereby depriving the citizens of Orange County of the honest services of an elected official. (SSI ¶¶ 12-14.)  Included in Count One are sixty-four overt acts allegedly committed in furtherance of the conspiracy.  (SSI ¶ 15.)  Counts Two through Four of the SSI describe a scheme of honest services mail fraud, alleging that Defendants "defraud[ed] the citizens of Orange County and the State of California of their right to the honest services of defendants" through false representations and "the non-disclosure and concealment of material facts."  (SSI ¶ 17.)  It is further alleged that "for the purpose of executing the scheme and artifice to defraud," Defendants "knowingly and willfully caused . . . mail matter to be sent and delivered by the United States Postal Service."  (SSI ¶ 19.)

## LEGAL STANDARD

The Federal Rules of Criminal Procedure require that an indictment be "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c).  In judging the sufficiency of an indictment, the question is whether the indictment adequately informs defendants of the charges against them, and not whether the government can prove its case.  *See United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982).  In a motion to dismiss, the allegations of the indictment are presumed true.  *See Buckley*, 689 F.2d at 897.

An indictment should be dismissed before trial if it fails to allege facts constituting a prosecutable offense.  *United States v. Varbel*, 780 F.2d 758, 762 (9th Cir. 1986); *see also United States v. Cogswell*, 637 F. Supp. 295, 296 n.2 (N.D. Cal. 1985).  To determine whether such facts are alleged, an indictment should be "(1) read as a whole; (2) read to include facts which are necessarily implied; and (3) construed according to common sense."  *See Buckley*, 689

1    F.2d at 899 (citing *United States v. Anderson*, 532 F.2d 1218, 1222 (9th Cir. 1976), *cert. denied*,

2    429 U.S. 839).  The challenged count should be considered as a whole, and a court should

3    refrain from reading it in a hypertechnical manner.  *See United States v. Ely*, 142 F.3d 1113,

4    1120 (9th Cir. 1997) (citing *United States v. Allender*, 62 F.3d 909, 914 (7th Cir. 1995)).

5

6    **ANALYSIS**

7

8    **1.      SUFFICIENCY OF CHARGES UNDER THE HONEST SERVICES STATUTE**

9

10          Defendants' Motion seeks dismissal of "Counts 1 through 4 of the superseding indictment

11   because the facts those counts allege do not amount to a violation of [the honest services and

12   mail fraud statutes]."  (Motion 2:6-8.)  Specifically, Defendants argue that the charges in Counts

13   One through Four are insufficient because (1) they are not based on violation of state statutes,

14   and (2) they fail to allege either a violation of the honest services statute involving either bribery

15   or nondisclosure.  (*Id*. at 1:22-2:5.)  In opposition, the Government contends that "Counts One

16   through Four properly charge each element of the crimes of conspiracy and honest services mail

17   fraud and provide defendants with adequate notice of the basis of those charges."

18   (Government's Consolidated Opposition to Motions by Defendant Michael S. Carona

19   ("Opposition") 1:24-26.)  After reviewing the parties' arguments and the relevant law, the Court

20   agrees with the Government.

21          In Counts One through Four of the SSI, Defendants are charged with violating 18 U.S.C.

22   § 1341 and § 1346, and with conspiring to violate these statutes.  Section 1341 is the general

23   mail fraud statute and provides that anyone who, "having devised or intending to devise any

24   scheme or artifice to defraud," uses the postal service "for the purpose of executing such scheme

25   or artifice or attempting so to do" is subject to criminal sanctions.  18 U.S.C. § 1341.  In 1988

26   Congress passed § 1346 to amend the general mail fraud statute by providing that "the term

27   'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible

28   right of honest services."  18 U.S.C. § 1346 (Pub. L. 100-690, 102 Stat. 4508) (1988).

Section 1346 was passed shortly after the United States Supreme Court ruled that the language of the general mail fraud statute, § 1341, should be construed narrowly and "limited in scope to the protection of property rights." *McNally v. United States*, 483 U.S. 350, 360 (1987). *McNally's* restrictive application of § 1341 to the protection of tangible property rights has been described as "overturn[ing] two decades of circuit and trial court decisions implementing the intangible rights doctrine" in cases involving the mail fraud statute. *See* Geraldine Szott Moohr, *Mail Fraud and the Intangible Rights Doctrine: Someone to Watch Over Us*, 31 Harv. J. On Legis. 153, 167 (1994); *see also* Donna M. Ducey, Note, McNally v. United States: *The Demise of the Intangible Rights Doctrine*, 66 N.C. L. Rev. 1035 (1988). By amending the definition of "scheme or artifice to defraud" to include schemes or artifices which deprive another of the "intangible right of honest services," § 1346 restored the mail fraud statute to its expansive pre-*McNally* scope. *See, e.g., United States v. Frega*, 179 F.3d 793, 802-03 (9th Cir. 1999) ("Congress fully intended § 1346 to reach schemes that seek to deprive the people of a state of the intangible right to honest services."); *see also United States v. Frost*, 125 F.3d 346, 365 (6th Cir. 1997) ("§ 1346 has restored the mail fraud statute to its pre-*McNally* scope"). In this Motion, Defendants raise the issue of what limiting principles, if any, a court should apply when § 1346 is the basis for federal corruption prosecution of local government officials.

### 1.1    The Honest Services Fraud Statute and State Law

Defendants advocate requiring a state law predicate for honest services prosecutions of local officials as a safeguard against the possibility that legislation passed by the U.S. Congress will infringe on state and local interests, and thus upset the balance of power in our federalist system. (Motion 4:21-5:2.) According to Defendants, "federalism concerns are particularly acute when federal prosecutors turn the vague honest services language of 18 U.S.C. § 1346 against local elected officials." (Motion 5:21-23.) Defendants find support for this position in *United States v. Brumley*, 116 F.3d 728 (5th Cir. 1997), a Fifth Circuit case addressing the use of § 1346 "to prosecute a state employee for ethical lapses." *Id.* at 730. The *Brumley* decision

1  affirmed the conviction of a state employee under § 1346, finding that he had deprived the

2  citizens and the government of Texas of their right to honest services.  *Id*.  But before reaching

3  this conclusion, the *Brumley* court defined "honest services" as requiring "that services must be

4  owed under state law and that the government must prove in a federal prosecution that they were

5  in fact not delivered."  *Id*. at 734.  Holding that state officials "must act or fail to act contrary to

6  the requirements of [their] job under state law" to justify prosecution under § 1346, the *Brumley*

7  court reasoned that § 1346 should not be read "to impose upon states a federal vision of

8  appropriate services . . . in other words, an ethical regime for state employees."  *Id*.  "The rights

9  of citizens to honest government," *Brumley* held, "have no purchase independent of rights and

10  duties locatable in state law."  *Id*. at 735.

11         After thorough review of the case law and academic literature cited by Defendants, the

12  Court is not persuaded that it should follow *Brumley* in interpreting § 1346 as requiring a state-

13  law predicate for an honest services prosecution of local officials.  The Ninth Circuit Court of

14  Appeals has not adopted the rule from *Brumley*, and among the Ninth Circuit's district courts

15  *Brumley* was endorsed in *United States v. Kott*, 2007 U.S. Dist. LEXIS 66125 (D. Alaska Sept.

16  4, 2007), but rejected in *United States v. Malone*, 2006 U.S. Dist. LEXIS 63814 (D. Nev. Sept.

17  6, 2006).  Considering that *Brumley* was decided over a decade ago and that Congress passed

18  § 1346 nearly two decades ago, the fact that *Brumley's* restrictive interpretation of § 1346 has

19  not yet been embraced by the Ninth Circuit is significant.  Ultimately, the Court finds that

20  important policy rationales support the decision not to adopt *Brumley's* state-law basis approach

21  to the honest services fraud statute.

22         In *Brumley*, the Fifth Circuit warned that without limiting principles, use of § 1346 to

23  prosecute local officials "would sorely tax separation of powers and erode our federalist

24  structure."  *Brumley*, 116 F.3d at 734.  Certainly, the federalist principles imbedded in our

25  constitutional system "establish a system of dual sovereignty between the States and the Federal

26  Government," assuring that the states "retain substantial sovereign authority."  *Gregory v.*

27  *Ashcroft*, 501 U.S. 452, 457-58 (1991) (citing *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990)).  But

28  the principles of federalism have never been understood as erecting an impenetrable wall

1    between state and local governments on the one side, and the federal government on the other.

2    Instead, the federalist system creates a system of counterbalances.  "Power being almost always

3    the rival of power, the general government will at all times stand ready to check the usurpations

4    of the state governments, and these will have the same disposition towards the general

5    government."  *Id.* at 458-59 (quoting Alexander Hamilton, *The Federalist No. 28*, pp. 180-181

6    (C. Rossiter ed. 1961)).  Thus, our federalist system is not solely concerned with rebuffing

7    incursions by the federal government into the domain of the States, but instead with ensuring "a

8    healthy balance of power between the States and the Federal Government [that] will reduce the

9    risk of tyranny and abuse from either front."  *Id.* at 458.

10          With these principles in mind, the Court finds the use of § 1346 to prosecute local

11   officials for corruption to be an appropriate exercise of power by the federal government.  It is in

12   cases such as this one, where the very legitimacy of state and local governments has been called

13   into question by allegations of corruption by elected officials wielding great power, that the

14   federal government's interest in intervening in the affairs of the States runs strongest.  *See*

15   George D. Brown, *New Federalism's Unanswered Question: Who Should Prosecute State and*

16   *Local Officials for Political Corruption?*, 60 Wash. & Lee L. Rev. 417, 493-94 (2003)

17   (identifying political corruption as an area where state "incapacity" may justify the

18   "federalization" of criminal conduct); *see also* Rory K. Little, *Myths and Principles of*

19   *Federalization*, 46 Hastings L.J. 1029, 1079 (1995) (positing that when state or local authorities

20   are unable or refuse to address criminal conduct, "the call for federal intervention may be even

21   more appropriate . . . .  Civil rights offenses in the South in the 1950s provide the most

22   compelling example.  Another example can be found in instances of state and local government

23   corruption, in which the criminal conduct at issue may place it beyond the effective reach (or

24   interest) of state authorities.").

25          Defendants contend that federalism concerns are particularly weighty in this case because

26   the federal corruption prosecution intrudes on California's "intricate and carefully calibrated

27   web of state and local regulation."  (Motion 7:15-22.)  The effectiveness of state and local

28   regulation may be presumed in cases involving corruption by low-level officials such as the

worker's compensation claim officer prosecuted in *Brumley*.  116 F.3d at 730-31.  But the Court cannot indulge this presumption of effectiveness in the prosecution of the elected sheriff of one of the nation's most populous counties, a position of special prominence and influence within the sphere of local and state government.

The Court rejects the *Brumley* requirement that honest services fraud prosecutions of local officials be based on a violation of state law, and accordingly there is no need to address the second prong of Defendants' argument and consider whether the SSI alleges a violation of a relevant state statute.  (Motion 11:23-12:2.)

### 1.2     The Honest Services Fraud Statute and Allegations of Bribery or Nondisclosure

Besides the state-law basis requirement, Defendants also ask the Court to interpret § 1346 as requiring that an honest services prosecution proceed under a theory of either (1) quid pro quo bribery, or (2) nondisclosure of a conflict of interest resulting in personal gain.  (Motion 18:7-21.)  Defendants cite cases, primarily from the First and Third Circuits, holding that prosecutions under § 1346 should be limited to cases of bribery or nondisclosure so that "every transgression of state governmental obligations" does not amount to a federal felony.  *United States v. Czubinski*, 106 F.3d 1069, 1077 (1st Cir. 1997); *see also United States v. Kemp*, 500 F.3d 257, 279 (3rd Cir. 2007).  No Ninth Circuit precedent is cited for this interpretation of § 1346.  Like the state-law basis requirement, the requirement that allegations against a local official charged under § 1346 involve bribery or nondisclosure serves to limit the scope of prosecutions under that statute.  Assuming, for purposes of this Motion only, that an allegation of bribery or nondisclosure is required in an honest services fraud prosecution of a local official, the Court finds that bribery is sufficiently alleged in the SSI and this "element" is therefore satisfied.

Defendants argue that the SSI does not include an allegation of bribery because the facts do not support a *quid pro quo* relationship between Carona and Haidl.  (Motion 19:3-20:9.)  In *Kemp*, the Third Circuit distinguished between true *quid pro quo* exchanges and situations where

1    gifts are made to a public official "merely to build a reservoir of goodwill that might ultimately

2    affect one or more of a multitude of unspecified acts, now and in the future."  *Kemp*, 500 F.3d at

3    281 (citation and internal quotes omitted).  *Kemp* held that only cases involving true *quid pro*

4    *quo* bribery can support an honest services prosecution.  Defendants argue that the SSI does not

5    allege *quid pro quo* bribery because it "does not allege that Haidl gave the gifts, or that Carona

6    received them, 'in exchange for' the actions Carona allegedly took affecting Haidl."  (Motion

7    19:20-20:2.)  In response, the Government contends that the "SSI does put defendants on notice

8    of a 'stream of benefits' bribery theory of honest services fraud," and that this stream of benefits

9    theory is sufficient to satisfy the bribery requirement.  (Opposition 20:10-18.)  The Court agrees

10   with the Government.

11          In *Kemp*, the stream of benefits theory was endorsed as a valid form of *quid pro quo*

12   bribery: "[T]he *quid pro quo* requirement is satisfied so long as the evidence shows a 'course of

13   conduct of favors and gifts . . . in exchange for a pattern of official actions favorable to the

14   donor.'"  *Kemp*, 500 F.3d 282 (citation omitted).  Paragraph 14(e) of the SSI describes precisely

15   such a relationship between Carona and Haidl.

16          *In exchange for* co-conspirator Haidl's financial assistance for defendant
             CARONA's campaign as well as co-conspirator Haidl's payments, gifts, and
17           loans provided to defendants CARONA and HOFFMAN and others, defendant
             CARONA provided co-conspirator Haidl with full access to the resources of the
18           Orange County Sheriff's Department and a "Get Out of Jail Free" card, and
19           defendant CARONA otherwise abused his position as Orange County Sheriff to
             enrich co-conspirator Haidl and co-conspirator Haidl's friends and family.
20

21

22   (SSI ¶ 14(e) (emphasis added).)

23   Presuming the truth of the factual allegations in the SSI as the Court must in the context of a

24   motion to dismiss, *Buckley*, 689 F.2d at 897, Haidl was funneling financial payments, loans, and

25   other gifts to Michael Carona, and "in exchange" Carona used his office as Sheriff to provide

26   Haidl with valuable benefits.  These allegations are sufficient to establish *quid pro quo* bribery

27   under a stream of benefits theory.

28

8

## 2.   DEBORAH CARONA'S JOINDER TO THE MOTION TO DISMISS COUNTS ONE THROUGH FOUR

Defendant Deborah Carona has joined the Motion to Dismiss as it applies to Count One of the SSI.  (Joinder in Defendant Michael Carona's Motion to Dismiss Counts 1-4 ("Joinder").) The SSI alleges that Deborah Carona received various gifts from Haidl and others, and assisted in funneling benefits between her husband and Haidl.  (SSI ¶¶ 15(4, 19, 48, 57, 59).)  This includes the allegation that she deposited $5,000 from Haidl into her personal bank account seeking to conceal the sham transaction for the sale of a Sea Ray boat.  Deborah Carona argues that "these allegations do not even begin to allege a federal felony."  (Joinder 3:11.)  According to Deborah Carona, nothing in the SSI suggests that she "knew there was anything wrong with receiving or depositing the money, or otherwise intended to defraud anyone of anything by putting the money in her bank account."  (*Id*. at 4:13-23.)  She goes on to argue that "by depositing the money and thus creating a record of it, a reasonable person would infer that Deborah Carona engaged in the very opposite of deceit and concealment."  (*Id*.)

Deborah Carona's challenge to the sufficiency of the indictment is easily rejected. Paragraph 15 of the SSI begins by stating that "in furtherance of the conspiracy, and to effect the purposes and objects thereof, defendants . . . committed or caused to be committed at least one of the following acts within the Central District of California or elsewhere."  (SSI ¶ 15.)  As one example of these "acts," Paragraph 15(45)-(48) alleges that Michael Carona paid Haidl $5,150 for a Sea Ray boat, and that Haidl secretly gave Michael Carona $5,000 in cash to reimburse him for the payment.  According to the SSI, "[i]n or about July 2001, defendant Deborah Carona deposited a portion of the Sea Ray cash in her personal checking account."  (SSI ¶ 15(48).) While the SSI does not explicitly allege that Deborah Carona made this deposit with knowledge of the sham transaction or with intent to conceal the transaction, these are facts which can be "implied" when the indictment is "construed according to commonsense."  *See Buckley*, 689 F.2d at 899.  This is especially true when the SSI is read as a whole to include the introductory language in Paragraph 15, stating that "the following acts" were committed "in furtherance of

9

the conspiracy."  (SSI ¶ 15.)

**DISPOSITION**

Because prosecution of the Defendants in this case allocates power to the federal government in a manner consistent with established principles of federalism, and because Counts One through Four of the SSI set forth a "plain, concise and definite written statement of the essential facts constituting the offense[s] charged," the Court DENIES the Motion to Dismiss Counts One Through Four.

IT IS SO ORDERED.

DATED: May 2, 2008

_____
Andrew J. Guilford
United States District Judge