UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | CASE NO. SA CR 06-224(B)-AG |
|---|---|---|
| Plaintiff, | ) | ORDER DENYING DEFENDANTS' MOTION TO TRANSFER VENUE |
| v. | ) | |
| MICHAEL S. CARONA, et al., | ) | |
| Defendants. | ) | |

    The essence of American culture lies in our founding documents. A principal feature of those documents is that when the government, with its immense power, accuses a person of a crime, that person is presumed innocent until proven guilty in a trial before an unbiased jury. These principles are not mere platitudes taught to school children, but are central to our nation's commitment to the protection of individual liberty. Including such concepts in the opening of this Order may seem unnecessarily obvious and sentimental. But sadly, it is not. For in this case some have disgraced our collective American heritage by actively seeking to deny the Defendants their right to a fair trial by an unbiased jury. This has been done by some seeking the money that comes with fame, and sponsored by others seeking profit. The conduct includes encouraging citizens to lie under oath in one of our country's courts. These selfish acts dishonor

not only our country, but those who have made great sacrifices to preserve the freedoms and rights that define who we are as a people.

But the Court finds that the advocates of such lawlessness are not nearly as important as they pretend, and their listeners are not the gullible audience they suppose. The Court will not overreact to bait offered by largely satirical commentators. Cynicism will not prevail, and the Court is confident that the population of Orange County will produce twelve jurors who will embrace their obligation as citizens of this country to provide the Defendants with a trial before an unbiased jury. The Court intends to take all necessary precautions to ensure that the promise of a fair trial is delivered in this case. The Motion to Transfer Venue ("Motion") is therefore DENIED.

**BACKGROUND**

Defendants Michael Carona, Deborah Carona, and Debra Hoffman ("Defendants") face trial on a series of charges relating to their alleged conspiracy to use Michael Carona's office as Orange County Sheriff to enrich themselves and other co-conspirators, thereby depriving the residents of Orange County of the honest services of an elected official. In this Motion, Defendants contend that the extent and nature of pretrial publicity related to the case requires the Court to presume that Defendants' right to an impartial jury has been prejudiced, leaving the Court "no choice but to transfer venue." (Motion 1:9-10.)

In general, pretrial publicity in this case has been similar to other criminal cases involving a high-profile member of society. Defendants have submitted a compilation of what they describe as "a sampling of the prejudicial newspaper articles and other media that have pervaded the Central District both before and after the indictment was unsealed on October 30, 2007." (Motion 2:14-17.) These articles include many viewpoint-neutral factual accounts of the case, along with negative portrayals of Defendant Michael Carona in articles with the following headlines: "A Sheriff's Rising Star is Dimmed by Scandal," *Los Angeles Times*; "Dumb and Dumber: The stupidity of ex-sheriff Mike Carona, forever preserved on FBI Surveillance tape,"

*OC Weekly*; and "Inside Orange County Jails: Grand Jury transcripts underscore just how low Michael Carona dragged the O.C. Sheriff's Department," *Los Angeles Times*. (Cline Decl. Appendix 1.)

While some degree of negative publicity is inevitable, and most of the media attention in this case has been unremarkable, Defendants contend that the unprecedented actions taken by a few individuals in the media have made pretrial publicity in this case exceptionally prejudicial. A talk radio program has encouraged potential jurors to conceal their biases toward Defendants during the jury selection process in an effort to increase the likelihood that they will be chosen for the jury in this case, and to unthinkingly find Defendants guilty if selected to the jury. Specifically, they have advocated that potential jurors lie under oath to the Court and the attorneys about their knowledge and preconceptions regarding the case, and about whether they listen to the offending radio program.

**LEGAL STANDARD**

Due process requires that a criminal defendant "receive a trial by an impartial jury free from outside influences." *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966); *see also Rideau v. Louisiana*, 373 U.S. 723, 724-26 (1963) (finding that failure to transfer venue violated defendant's due process rights where proceedings occurred "in a community so pervasively exposed" to prejudicial publicity that the trial was "but a hollow formality"). A court must grant a motion to change venue "if prejudicial pretrial publicity makes it impossible to seat an impartial jury," *Ainsworth v. Calderon*, 138 F.3d 787, 795 (9th Cir. 1998), and the burden is on the defendant seeking a change of venue to establish that he cannot obtain a fair trial without a change. *See, e.g., Gallego v. McDaniel*, 124 F.3d 1065, 1071 (9th Cir. 1997) (district court's refusal to change venue was not error where defendant "failed to show" inability to receive a fair trial).

In *Daniels v. Woodford*, 428 F.3d 1181, 1211 (9th Cir. 2005), *cert. denied*, 127 S. Ct. 2876 (2007), the Ninth Circuit held that to support a change of venue the defendant "must

demonstrate either actual or presumed prejudice." Actual prejudice exists where the jurors have "demonstrated actual partiality or hostility that could not be laid aside." *Id*. Because this motion for change of venue is brought before a jury has been selected, and even before the voir dire process, Defendants cannot establish actual prejudice and must make a showing of presumed prejudice. "Prejudice is presumed only in extreme instances 'when the record demonstrates that the community where the trial [is to be] held [is] saturated with prejudice and inflammatory media about the crime.'" *Id*. (quoting *Ainsworth*, 138 F.3d at 795). A court is to consider three factors when determining presumed prejudice: (1) whether there was a "barrage of inflammatory publicity immediately prior to trial, amounting to a huge . . . wave of public passion", (2) whether the news accounts were primarily factual because such accounts tend to be less inflammatory than editorial or cartoons; and (3) whether the media accounts contained inflammatory or prejudicial material not admissible at trial. *See Daniels*, 428 F.3d at 1211; *see also Ainsworth*, 138 F.3d at 795. A district judge has broad discretion in ruling on a motion for change of venue. *See United States v. Rewald*, 889 F.2d 836, 863 (9th Cir. 1989)

**ANALYSIS**

Defendants contend that pervasive, negative pretrial publicity surrounding this case requires that the Court presume prejudice. (Motion 13:18-22.) Having considered the particular facts of this case under the factors from *Daniels*, the Court declines to find a presumption of prejudice.

Under the first *Daniels* factor, courts consider whether there has been a "barrage of inflammatory publicity" that amounts to "wave of public passion." *Daniels*, 428 F.3d at 1211. While there has clearly been heightened public interest in this case, such interest is expected when a prominent elected official is charged with criminal wrongdoing. It is natural, and indeed healthy, for citizens to express concern when the integrity of our public servants falls under suspicion. The attention of the public and the media to this case is not unusual in this regard. *See United States v. Parker,* 877 F.2d 327, 331 (5th Cir. 1989) (stating that a denial of a motion

to transfer is not error unless, among other things, pretrial publicity "exceeded the sensationalism inherent in the crime"). The Court is also influenced by the fact that the crimes alleged in this case, such as bribery, corruption, and witness tampering, are of a character less likely to incite a "wave of public passion." *Daniels*, 428 F.3d at 1211. In contrast to the facts of this case, the typical case requiring a transfer of venue involves a crime, such as rape or murder, that is likely to evoke a visceral response from the public. *See, e.g, Columbia Broadcasting Systems, Inc. v. United States District Court for Central District of California, 729 F.2d 1174, 1181* (9th Cir. 1984) ("most cases in which pre-trial publicity has presented serious constitutional problems have involved lurid subject matter"); *Daniels*, 428 F.3d at 1187 (requiring change of venue where intense publicity focused on defendant's alleged murder of two police officers); *Sheppard v. Maxwell*, 384 U.S. 333, 335-37 (requiring change of venue in case where defendant physician was accused of bludgeoning his pregnant wife to death, and "news media inflamed and prejudiced the public"). The potential for public outrage and indignation spawned by allegations of government corruption should not be downplayed. But the public response to acts of physical violence is of an inherently different character, involving passion that heightens the risk of bias and prejudice trumping rational thought.

Another factor in the *Daniels* analysis is whether news accounts of the case are "primarily factual, because such accounts tend to be less inflammatory than editorials or cartoons." *Daniels*, 428 F.3d at 1211. As with any high-profile case, the media coverage here does include editorials and other opinionated statements expressing bias and hostility against the Defendants. But the majority of media accounts are factual in nature, following the progress of the case as it moves toward trial. Further, the Court finds that the volume of editorialization and expressions of opinion in the media has generally declined since charges were brought against Defendants in October 2007.

Finally, *Daniels* is concerned with whether media accounts of the case contain "inflammatory or prejudicial material not admissible at trial." *Daniels*, 428 F.3d at 1211. Defendants contend that media accounts of Michael Carona include a "wide range" of prejudicial materials not admissible at trial. (Motion 14:4-24.) But many of the materials

5

Defendants cite in this regard were published well before charges were brought against Defendants in this case, dating back to as early as 2005. As the elected sheriff of one of the nation's most populous counties, Michael Carona was certain to be the focus of media attention, both positive and negative. That he was at times portrayed in a negative light regarding events and allegations unrelated to the criminal charges in this trial does not establish a presumption of prejudice. And the nonexistence of a presumption of prejudice is especially strong regarding media attention before June 2006, when public perception of Michael Carona was sufficiently positive that he was elected to a third consecutive term as Orange County Sheriff. The Court's ruling here might be different if the secretly recorded conversations between Michael Carona and cooperating witness Don Haidl had been suppressed, and would not be available at trial. But because the Court has ruled that these conversations may be presented to the jury, media coverage of this admissible evidence is not inherently unduly prejudicial.

In sum, the Court does not find that the community is "so saturated with inflammatory and prejudicial media" that prejudice against Defendants must be presumed. *Daniels*, 428 F.3d at 1211. In reaching this conclusion the Court notes that Orange County is home to a diverse population of over three million people, providing a substantial jury pool for Defendants' trial. The Ninth Circuit has recognized that the size of the relevant community is an important factor in determining whether the community is "so saturated" with negative media that a presumption of prejudice should apply, as large metropolitan areas are able to absorb the effects of prejudicial publicity in ways that smaller and more insular communities could not.

> [T]he courts have long held that in a large metropolitan area, prejudicial publicity is less likely to endanger the defendant's right to a fair trial. The size and heterogeneity of such communities make it unlikely that even the most sensational cases will become "a cause celebre" where "the whole community . . . becomes interested in all the morbid details." Moreover, in a populous metropolitan area, the pool of potential jurors is so large that even in cases attracting extensive and inflammatory publicity, it is usually possible to find an adequate number of untainted jurors.

> Almost all the cases in which the Supreme Court has found that press coverage deprived the defendant of a fair trial have been tried in small rural communities.

*Columbia Broadcasting*, 729 F.2d at 1181 (internal citations omitted).

A stone thrown into a small pond disturbs the entire body of water, while the same stone thrown into a large lake will have little effect beyond the immediate place of impact. In contrast to small rural communities that may find themselves engulfed by the ripple effects of prejudicial publicity, the "size and heterogeneity" of Orange County neutralize these effects.

In finding that Defendants have not established a presumption of prejudice based on pretrial publicity in this case, the Court assumes that careful pretrial screening, including voir dire, will effectively identify the biases of potential jurors. Defendants contend that this assumption is faulty because the efficacy of pretrial screening to identify biases in potential jurors has been undermined by a radio show encouraging its listeners to act as "stealth" jurors. (Motion 15:10-21.) While recognizing the peculiar challenges of this case, the Court is confident that through diligent and comprehensive pretrial screening a fair and impartial jury can be selected. The power of the voir dire process to illicit honest answers should not be underestimated, especially when the threat of federal perjury charges looms. Voir dire is "the prime safeguard," and the "method we have relied on from the beginning" to identify juror bias. *Fields v. Brown*, 503 F.3d 755, 772 (9th Cir. 2007); *Patton v. Yount*, 467 U.S. 1025, 1038 (1984). The Court agrees with the sentiments from *Application of Cohn*, 332 F.2d 976, 977 (2d Cir. 1964), that "[i]t would indeed be a cynical approach to believe that jurors, who give their assurance that they can fairly and impartially decide the fact issues before them, would deliberately conceal deep prejudices." By accepting the possibility that potential jurors would perjure themselves to satisfy the whim of a radio personality, the Court would cast doubt on the integrity of the very foundations of the jury trial system. This it will not do.

**CONCLUSION**

Because the citizens of Orange County can and should provide the unbiased jury guaranteed to Defendants, the Motion to Transfer Venue is DENIED.

IT IS SO ORDERED.

DATED: May 21, 2008

                                                            _____
                                                               Andrew J. Guilford
                                                            United States District Judge